The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 63 year-old male who smoked most of his adult life until ultimately stopping following the near fatal episode of acute respiratory failure giving rise hereto.
2. While still in school several years prior to his sixteenth birthday he initially entered the grain processing trade when he began working on a part-time basis after school at the Princeton feed mill of defendant Gurley Milling Company sweeping the premises. The same employer had been in business since 1936 and operated as Gurley Milling Company until separating its businesses in 1952 and becoming Gurley Milling Company of Selma and Gurley Milling Company of Princeton. In 1968, however, the two were merged back together as Gurley, Inc. until the business was sold to defendant Illinois Cereal Mills in 1982. Although defendant Carl R. Gurley, Inc. was incorporated in 1986; it had no "actual employees" until purchasing an old chemical plant in Princeton and attempting to convert the same into a seed mill in 1990.
3. After he was sixteen plaintiff began working full-time at Gurley Milling Companies Princeton feed grain mill, which received raw grain, including alfalfa, soybean, oats, barley and milo that was initially shipped by rail and ultimately arrived at the premises by truck to be processed into feed. During the nine years he worked there full-time basis from 1947 until 1956 plaintiff not only remained responsible for sweeping the premises, but for loading and unloading, mixing and hauling the feed grain sold, whose processing created and thereby exposed him to a visibly dusty work environment where he worked without air-conditioning, adequate ventilation or respiratory protection.
4. As a result of the visibly dusty working conditions there plaintiff coughed a lot, but did not develop disabling exertional dyspnea until after the morefully hereinafter described episode of acute respiratory failure.
5. After leaving the employ of defendant Gurley Milling Company (of Princeton) in 1956 plaintiff worked as a truck driver for A P for 23 1/2 years hauling food where he was no longer exposed to grain dust. He also worked for about a year for Perdue hauling chickens and sawdust and for a like period hauling lumber for someone else as well as a number of other employers as indicated by the stipulated Social Security earnings records for that period.
6. In 1980 plaintiff returned to the grain processing trade when he became employed by defendant Gurley, Inc., and worked there in 1980 as well as 1982 and 1983 primarily driving a truck hauling grain. Although no longer exposed to the same visibly dusty work environment that he had been working inside the grain mill prior to 1956; plaintiff was responsible for loading and unloading his vehicle, which did create and expose him to visible grain dust. In 1987 and 1988 (See the stipulated Social Security Earnings Records) plaintiff similarly hauled grain for Carl R. Gurley from both the Princeton and Selma Mills.
7. In April of 1990 plaintiff became employed by defendant Carl R. Gurley, Inc. and during the months of April, May and June of that year was involved in converting the chemical plant that Gurley had purchased into a seed mill operation resulting in no significant exposure to grain dust prior to the beginning of grain production on the premises on September 17, 1990.
8. The involved claim is one for disabling chronic obstructive lung disease due to plaintiff's exposure to the hazards of respirable grain dust during his approximate ten year period of employment in the same trade, which (disease) is characteristic of and peculiar to employment in the grain processing trade, wherein, as compared to members of the general public and other employments at large, there is an increased risk of developing the same disease.
9. Although prior to September 17, 1990 plaintiff suffered from chronic obstructive lung disease, which was due in significant, but indeterminate, part to both his cigarette smoking history and exposure to the hazards of respirable grain dust working in the grain processing trade resulting in him being sensitized to grain dust and subject to the type of acute inflammatory response sustained on the first mentioned date; other than coughing a lot when exposed to grain dust he had not experienced any significant pulmonary problems, and in particularly the exertional dyspnea he has since developed.
10. As previously stated, September 17, 1990 was the first day that Carl R. Gurley, Inc's. seed mill was operating and for several hours that evening plaintiff was inside the mill bagging rye seed exposing him to a visibly dusty work environment not only resulting in an acute inflammatory response and nearly fatal episode of acute respiratory failure with associated hypoxemia (low oxygen levels in his blood) and transient cor pulmonale (or right-sided heart failure) from the strain; but permanently augmenting his existing non-disabling chronic obstructive lung disease, which was due in significant, but indeterminate, part to both his cigarette smoking habit and years of exposure to the hazards of respirable grain dust in the grain processing trade, resulting in additional permanent damage to his lungs and proximately contributing to the total incapacity from work he has experienced since his underlying lung condition became decompensated manifested by the exertional dyspnea plaintiff now suffers merely walking a half a block.
11. After plaintiff collapsed at work on September 17, 1990 and could not breathe he was initially taken to Johnson County Memorial Hospital for treatment before being transferred to Wake Memorial Hospital in Raleigh where he was admitted for treatment of his acute respiratory failure and associated transient right-sided heart failure.
12. Plaintiff remains under the care of Dr. Ted R. Kunstling, a Raleigh pulmonologist, and is not only in need of a continued program of medication consisting of bronchodilators and inhaled steroids for his disabling chronic obstructive lung disease, but regularly scheduled monitoring of the same condition in order to both improve the same condition and to provide necessary relief therefrom. Because of his permanent lung condition he is only capable of sedentary activity and should avoid dusty work environments as well as extremes of temperature, humidity or other potential respiratory irritants.
13. Plaintiff suffers from an AMA Class IV, or severe, permanent impairment of pulmonary function as a result of his chronic obstructive lung disease and his condition will continue to progressively worsen in the future.
14. Due to the severity of his permanent lung disease plaintiff lacks the capacity to earn wages in his former employment in the grain processing trade for defendant-employer or any other employment and has since his nearly fatal acute respiratory failure on September 17, 1990 while employed by defendant Carl R. Gurley, Inc.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Due in significant part to his exposure to the hazards of respirable grain dust during his approximate ten years of working in the grain processing trade plaintiff has developed disabling chronic obstructive lung disease, which (disease) is thus due to causes and conditions that are characteristic of and peculiar to employment in the same grain processing trade, wherein, as compared to members of the general public and the other employments at large, there is an increased risk of that disease. Therefore plaintiff has developed a compensable occupational disease pursuant to the provisions of G.S. § 97-53(13).
2. Plaintiff was last injuriously exposed to the hazards of the occupational lung disease giving rise hereto on September 17, 1990 while working for defendant-employer Carl R. Gurley, Inc. under the circumstances described in the above Findings of Fact. G.S. § 97-58. Haynes v. Feldspar Producing Company, 222 N.C. 163
(1942).
3. As a result of the disabling occupational lung disease giving rise hereto plaintiff is totally and permanently disabled entitling him to compensation at a rate of $306.25 per week commencing as of September 17, 1990 and thereafter continuing at the same rate throughout his lifetime. G.S. § 97-29.
4. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant-employer Carl R. Gurley is obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational disease giving rise hereto throughout his lifetime, including as part thereof, regularly scheduled monitoring of his condition as well as the medication program of bronchodilators and inhaled steroids he requires. G.S. § 97-25; G.S. § 97-59.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer Carl R. Gurley, Inc., and its carrier, Aetna Casualty and Surety Company, shall pay plaintiff, on account of his total and permanent disability, compensation at a rate of $306.25 per week commencing as of September 17, 1990 and continuing at the same rate throughout his lifetime. Such compensation as has accrued hereunder shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of twenty-five (25) percent of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the same award and forwarded directly thereto. For the balance of his fee defendant-carrier Aetna Casualty and Surety Company shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants Carl R. Gurley and its carrier, Aetna Casualty and Surety Company, shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational lung disease giving rise hereto throughout his lifetime, including as part thereof, regularly scheduled monitoring of his condition as well as the medication program of bronchodilators and inhaled steroids he requires, when bills for the same are submitted on proper forms, through defendant-carrier Aetna Casualty and Surety Company to the Industrial Commission for approval and are approved by the Commission.
4. Defendant Carl R. Gurley and its carrier, Aetna Casualty and Surety Company, shall bear the costs, including as part hereof, an expert witness fee in the amount of $350.00 to Dr. Ted R. Kunstling, who appeared by way of deposition and gave expert medical testimony.
5. IT IS FURTHER ORDERED that defendants Illinois Cereal Mill, Inc., and its carrier, Wausau Insurance Company, be DISMISSED, with prejudice from this action.
 S/ _____________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
CMV/CNP/tmd 5/5/95